IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| BLAIR DOUGLASS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>PHARMAVITE LLC, FOODSTATE, INC., PHARMAVITE DIRECT LLC, and BONAFIDE HEALTH LLC,<br><br>        Defendants. | Civil Action No. 2:25-cv-1721<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

Plaintiff Blair Douglass ("Douglass" or "Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendants Pharmavite LLC, FoodState, Inc., Pharmavite Direct LLC, and Bonafide Health LLC (each a "Defendant" and collectively, "Defendants"), and makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations pertaining to Douglass, which are based on personal knowledge:

## NATURE AND SUMMARY OF THE ACTION

1.      Each Defendant owns, leases, and/or operates physical facilities, which facilities may include, for some Defendants, corporate offices, manufacturing facilities, shipping and/or distribution centers. Each Defendant owns, operates and maintains one or more websites. Each Defendant has at least one such website on which consumers who are members of the public can shop for and purchase products manufactured or sold by that Defendant.

2.      From its websites, each Defendant makes various goods, like nutritional supplements, and/or services, like customer service, return processing, and technical support, available to consumers in Pennsylvania and across the country.

3.      Consumers may remotely access the goods and/or services at each Defendant's websites through the internet, located at www.pharmavite.com and www.naturemade.com (Pharmavite LLC), www.uqora.com, www.equelle.com, and www.hellobonafide.com (Bonafide Health LLC), and www.megafood.com (Foodstate, Inc.) (collectively, the "Websites").

4.      Douglass is legally blind.

5.      As a result of his blindness, Douglass uses screen reader auxiliary aids to remotely access the goods and/or services available through each Defendant's Websites.[1]

6.      This action arises from each Defendant's ongoing failure to effectively communicate with Douglass because its Websites are not sufficiently compatible with screen reader auxiliary aids, thereby denying Douglass full and equal access to the goods and/or services available through each Defendant's Websites.

## JURISDICTION AND VENUE

7.      The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

8.      Upon information and belief, each Defendant makes available its Websites, and the goods and/or services it provides through the Websites, in Pennsylvania and to consumers who reside in Pennsylvania.

---

[1] Douglass acknowledges that FoodState, Inc. only operates one Website. Douglass does not, by using the plural phrase "each Defendant's Websites" or "its Websites" intend to imply that each Defendant operates more than one website.

9.      Each Defendant's in-state sales through its Websites, and the availability of the Websites and the goods and/or services thereon, are closely related to Douglass's claim that each Defendant discriminates against blind shoppers when providing that Defendant's goods and/or services through its Websites.

10.     Each Defendant purposefully avails itself of the privilege of conducting activities in Pennsylvania by operating interactive commercial websites that facilitate the knowing and repeated transmission of computer files into Pennsylvania over the internet.[2]

11.     Douglass was injured when he attempted to remotely access the goods and/or services available through each Defendant's Websites while Douglass was physically located in Pittsburgh, Pennsylvania.

12.     Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Douglass's claims occurred.

## PARTIES

13.     Douglass is a natural person over the age of 18.

14.     He resides in and is a citizen of Pittsburgh, Pennsylvania.

15.     He works for an area university as a Program Administrator, managing all phases of the admission process for a highly competitive science training program. Douglass is also a licensed Pennsylvania attorney. He graduated from the University of Pittsburgh School of Law.

---

[2] *See Murphy v. Rolex Watch USA, Inc.*, No. 1:23-CV-00086-SPB, 2024 U.S. Dist. LEXIS 84515, at *17-18 (W.D. Pa. May 9, 2024) (Lanzillo, M.J.) (exercising personal jurisdiction over out-of-forum website operator in a website accessibility case); *Gniewkowski v. Lettuce Entertain You Enters.*, No. 2:16-cv-1898-AJS, Order, ECF 123 (W.D. Pa. Apr. 25, 2017), *clarified by Order of Court*, ECF 169 (W.D. Pa. June 22, 2017) (Schwab, J.) (same).

While at Pitt Law, Douglass completed a judicial internship in the United States District Court for the Western District of Pennsylvania.

16.    Douglass has advocated for blind individuals his entire life.[3]

17.    On five occasions, the United States District Court for the Western District of Pennsylvania has appointed Douglass to represent nationwide classes of blind consumers in class actions concerning the inaccessibility of commercial websites.[4]

18.    Each Defendant offers goods and/or services to the public through its Websites.

19.    Each Defendant's Websites are open to the public, as each Defendant allows the public to access the goods and/or services available through its Websites.

### STANDING UP FOR TITLE III OF THE ADA

20.    "Congress passed the ADA in 1990 to fix a serious problem—namely, the seclusion of people with disabilities resulting in explicit and implicit discrimination. . . . The disabled population hoped that, as a result of the ADA, their lives would no longer be shaped by limited access and the inability to choose. . . . However, reality—a lack of compliance with the ADA and severe underenforcement of the statute—soon destroyed this hope."[5]

---

[3] Zak Koeske, *Pitt student aims to rise above stereotype*, Pittsburgh Post-Gazette (July 23, 2009), https://www.post-gazette.com/local/south/2009/07/23/Pitt-student-aims-to-rise-above-stereotype/stories/200907230364 ("Blindness can't hold you back from doing anything you want to do[.] …Blindness is simply a physical condition. You have to make a few adaptations, but those aren't big enough to affect your ability to do a job competently. …There are always going to be some people who doubt your ability. ... I have no trouble trying to prove them wrong.").

[4] *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, Doc. 47 (W.D. Pa. Feb. 16, 2022) (Baxter, J.), *Douglass v. Optavia LLC*, No. 2:22-cv-594, Doc. 38 (W.D. Pa. Jan. 23, 2023) (Wiegand, J.), *Douglass v. P.C. Richard & Son, LLC*, No. 2:22-cv-399, Doc. 55 (W.D. Pa. June 27, 2023) (Kelly, J.), *Douglass v. Mondelēz Global LLC*, No. 2:22-cv-875, Doc. 26 (W.D. Pa. Sept. 19, 2023) (Hardy, J.), and *Douglass v. iFit Inc.*, No. 2:23-cv-917, Doc. 29 (W.D. Pa. Apr. 11, 2024) (Horan, J.).

[5] Kelly Johnson, *Testers Standing up for the Title III of the ADA*, 59 Cas. W. Res. L. Rev. 683, 684 (2009), http://scholarlycommons.law.case.edu/caselrev/vol59/iss3/6 (*citing* H.R. REP. No. 101-485, pt. 2, at 28-29 (1990); Elizabeth Keadle Markey, *The ADA's Last Stand?: Standing and*

21.    More than thirty years "after the passage of the ADA, numerous facilities are still not compliant leaving the disabled population in a second-class citizenship limbo. Title III of the ADA allows both the U.S. Attorney General[6] and private individuals[7] to sue, but the rate at which [ ] the Attorney General [is] bringing suit seeking compliance is extremely low. The Department of Justice's Disability Section, tasked with ADA enforcement, is understaffed[.]"[8]

22.    Thus, "private suits by necessity represent the main tool for ensuring compliance with Congress' intent in passing the ADA,"[9] most of which suits "are brought by a small number of private plaintiffs who view themselves as champions of the disabled."[10]

23.    The U.S. Department of Justice ("DOJ") supports this dynamic, recognizing that because it "cannot investigate every place of public accommodation," "[p]rivate plaintiffs play an important role in enforcing the ADA[.]"[11]

24.    Consistent with these policies, Douglass files this case to ensure each Defendant provides full and equal access to the goods and/or services that each Defendant makes available to the public through its Websites.

---

*the Americans with Disabilities Act*, 71 Fordham L. Rev. 185 (2002) (arguing for a more lenient standard for standing under the ADA); and Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 3 (2006) (discussing the need for private enforcement in Title III)).

[6] 42 U.S.C. § 12188(b).

[7] 42 U.S.C. § 12188(a).

[8] Johnson, *supra* note 5.

[9] *Betancourt v. Ingram Park Mall*, 735 F. Supp. 2d 587, 596 (W.D. Tex. 2010).

[10] *Id.* (*quoting Molski v. Evergreen Dynasty Corp*., 500 F.3d 1047, 1062 (9th Cir. 2007)); *D'Lil v. Best Western Encina Lodge & Suite*s, 538 F.3d 1031, 1040 (9th Cir. 2008) (same).

[11] Statement of Interest of the United States of America, *ERC v. Abercrombie & Fitch Co.*, No. 1:09-cv-03157 (D. Md.), ECF No. 38, at *1 (July 6, 2010); *See also Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.").

## SUBSTANTIVE ALLEGATIONS

25.     Screen reader auxiliary aids allow blind persons to use websites and mobile apps to remotely access the goods and/or services retailers provide through those websites, like customer service, return processing, and technical support.

26.     Two of the most commonly used aids are JAWS from Freedom Scientific (available on Windows computers), and VoiceOver (available on macOS and iOS devices).

27.     "JAWS, Job Access With Speech, is the world's most popular screen reader, developed for computer users whose vision loss prevents them from seeing screen content or navigating with a mouse. JAWS provides speech and Braille output for the most popular computer applications on your PC. You will be able to navigate the Internet, write a document, read an email and create presentations from your office, remote desktop, or from home."[12]

28.     "VoiceOver is an industry-leading screen reader that tells you exactly what's happening on your device. Auditory descriptions of elements help you easily navigate your screen through simple gestures on a touchscreen or trackpad or a Bluetooth keyboard. . . . VoiceOver can also describe people, objects, text, and graphs in greater detail than ever. It's available in more than 60 languages and locales on iPhone, iPad, Mac, Apple Watch, Apple TV, and HomePod and offers deep customization options for your needs. Select and modify your favorite built-in voice for speech feedback, and tailor its verbosity, speed, and accompanying sound and haptic feedback to your own preferences."[13]



---

[12] *JAWS®*, Freedom Scientific, https://www.freedomscientific.com/products/software/jaws/ (last accessed June 2, 2025).
[13] *Accessibility*, Apple, https://www.apple.com/accessibility/vision/ (last accessed June 2, 2025).

29.    The images to the right show a retailer coding its website so that blind shoppers can remotely access physical facilities, and the goods and services provided at those physical facilities.



30.    The first image illustrates what shoppers perceive visually when browsing the retailer's website with an iPhone. The second image shows the audio description highlighted for that image in green.

31.    Although invisible to the eye, screen reader auxiliary aids read the highlighted text of the second image aloud to describe that image to shoppers who cannot perceive content visually.

32.    In this example, when a screen reader user tabs to the image file, the website announces, "[o]ne burlap and cotton tote bag with a custom printed architectural company logo."

33.    Blind shoppers require audio descriptions, frequently called "alternative text," like this to access physical facilities, and the goods and/or services provided at physical facilities, through a website.

34.    Douglass's experience is consistent with the investigations of his counsel, which confirm that screen reader auxiliary aids cannot fully and equally access the content on each Website using VoiceOver (on mobile devices) and JAWS (on desktop devices).

35.     As a result of visiting each Website in April 2024 and thereafter, and from investigations performed on his behalf, Douglass found he could not access each Defendant's goods and/or services fully and equally using VoiceOver on an iPhone.

36.     Consistent with public policy encouraging the resolution of "dispute[s] informally by means of a letter[,]" *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006), which "prelitigation solutions [are] clearly, the most expedient and cost-effective means of resolving" website accessibility claims, *see Sipe v. Am. Casino & Ent. Properties*, LLC, 2016 WL 1580349, at *2-3 (W.D. Pa. Apr. 20, 2016), Douglass contacted counsel for each Defendant about its inaccessible Websites, on July 25, 2024 and thereafter.

37.     The parties have since discussed Douglass's claims and while each Defendant has taken some efforts to improve the accessibility of its Websites, Douglass found that the Websites still deny him full and equal access.

38.     Each Defendant's ongoing failure to effectively communicate with Douglass, together with each Defendant's policies and practices giving rise to this ineffective communication, deny Douglass full and equal access to each Defendant's Websites and the goods and/or services each Defendant makes available through its Websites.

39.     Each Defendant's ongoing failure to effectively communicate with Douglass, together with each Defendant's policies and practices giving rise to this ineffective communication, deter Douglass from using the Websites to access the goods and/or services each Defendant makes available through its Websites.

40.     Still, Douglass intends to return to the Websites within the next six months to determine if each Defendant effectively communicates with Douglass and, if so, to attempt to

access each Defendant's Websites and the goods and/or services each Defendant makes available through its Websites.

## CLASS ALLEGATIONS

41.    Douglass brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class: all blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from accessing or attempting to access, or who will access, attempt to access, or be deterred from accessing or attempting to access any of the Websites from the United States.

42.    Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit the parties and this Court, and will facilitate judicial economy.

43.    Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same or similar conduct of each Defendant.

44.    Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been, are being, and/or will be denied their civil rights to full and equal access, and use and enjoyment of each Defendant's Websites and/or services due to each Defendant's failure to make the Websites fully accessible and independently usable as described herein.

45.    Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will

fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of ADA litigation.

46.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because each Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

### Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

47.     The assertions contained in the previous paragraphs are incorporated by reference.

48.     Douglass and the class members are persons with a "disability." 42 U.S.C. §§ 12102(1)(A), 12102(2)(A).

49.     Each Defendant is a "public accommodation." 42 U.S.C. §§ 12181(7)(E).

50.     Each Defendant failed to comply with the ADA by, among other things, impairing Douglass's and the class's access to the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations; impairing Douglass's and the class's access to the goods and/or services, privileges, advantages, or accommodations; impairing Douglass's and the class's opportunity to participate in or benefit from goods and/or services, privileges, advantages, or accommodations; impairing Douglass's and the class's access to services, and treating them differently than others because of the absence of auxiliary aids and services, or the failure to modify policies and practices; and failing to effectively communicate with Douglass and the class. 42 U.S.C. §§ 12182(a), 12181(b)(1)(A)(i), 12181(b)(1)(A)(ii), 12182(b)(2)(A)(ii), 12182(b)(2)(A)(iii).

51.     This conduct impaired Douglass's and the class's full and equal access to each Defendant's Websites and the goods and/or services each Defendant makes available through its Websites.

52.     This conduct also deters Douglass and the class from using the Websites to access the goods and/or services each Defendant makes available through its Websites, meaning Douglass and the class must wait until each Defendant elects to retrofit its Websites to be accessible.

## **PRAYER FOR RELIEF**

WHEREFORE, Douglass requests judgment as follows:

(A)     An order certifying the proposed class, appointing Douglass as representative of the proposed class, and appointing undersigned counsel as counsel for the proposed class;

(B)     An injunction under 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501 which directs each Defendant to take those steps necessary to ensure each Defendant's Websites and the goods and/or services that each Defendant makes available through its Websites are fully, equally, and independently accessible to Douglass and the class by the Websites, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that each Defendant has adopted and is following policies and practices that will cause each Defendant to remain in compliance with the law;

(C)     Payment of actual, statutory, nominal, and other damages, as the Court deems proper;

(D)     Payment of costs of suit;

(E)     Payment of reasonable attorneys' fees under 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, including costs to monitor each Defendant's compliance with the judgment;[14]

(F)     Whatever other relief the Court deems just, equitable and appropriate; and

(G)     An order retaining jurisdiction over this case until each Defendant has complied with the Court's orders.

Dated: November 4, 2025                    /s/ Kevin W. Tucker
                                           Kevin W. Tucker (He/Him) (PA 312144)
                                           Kevin Abramowicz (He/Him) (PA 320659)
                                           Chandler Steiger (She/Her) (PA 328891)
                                           Stephanie Moore (She/Her) (PA 329447)
                                           Kayla Conahan (She/Her) (PA 329529)
                                           Jessica Liu (She/Her) (PA 328861)
                                           **EAST END TRIAL GROUP LLC**
                                           6901 Lynn Way, Suite 503
                                           Pittsburgh, PA 15208
                                           Tel. (412) 877-5220
                                           Fax. (412) 626-7101
                                           ktucker@eastendtrialgroup.com
                                           kabramowicz@eastendtrialgroup.com
                                           csteiger@eastendtrialgroup.com
                                           smoore@eastendtrialgroup.com
                                           kconahan@eastendtrialgroup.com
                                           jliu@eastendtrialgroup.com

---

[14] *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191); *Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11).